O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERTHA BRACKEN,[1] | ) Case No. EDCV 07-764-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[2] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[3]

**I.**

---

[1] The Court notes that Bertha Bracken brings this proceeding on behalf of Sabree Baheejah Hakeem. The Court will refer to Plaintiff as "Sabree Baheejah Hakeem" or "Plaintiff."

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 20, 21.)

[3] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in   42 U.S.C. § 405(g).

1

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") erred by misstating or mischaracterizing the written lay witness testimony of Patricia Hakeem, Barbara Turner, Estella Boykin, and Debbie McCall;[4]

2. Whether the ALJ erred by misstating or mischaracterizing evidentiary examples used to support his analysis under the six functional domains of childhood disability; and

3. Whether the ALJ erred by failing to properly develop the record.

(JS at 2-3.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452

---

[4] The Court has combined the analysis of disputed issues one through four, as listed in the JS, into one issue for purposes of its analysis here.

(9th Cir. 1984).

## III.

## DISCUSSION

**A.     The ALJ Properly Considered the Observations of the Lay Witnesses.**

Plaintiff contends the ALJ failed to provide sufficient reason for disregarding the testimony of four lay witnesses.  (JS at 3-15.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment.  Nguyen, 100 F.3d at 1467.  The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ is not relieved of his obligation to comment upon lay witness testimony simply because he has properly discredited the Plaintiff's testimony.  To find otherwise would be based upon "the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." Id.  Similarly, the mere fact that the lay witness is a relative may not be a valid reason alone for rejecting lay witness testimony.  Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); but see Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (the ALJ's consideration of the claimant's prior girlfriend's close relationship with the plaintiff and desire to help

3

him as a possible reason for bias was a reason germane to that witness).

The ALJ's failure to address the witness' testimony generally is not harmless.[5] In failing to address a lay witness' statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

The Court will address each of Plaintiff's contentions in turn.

**1.     Lay Witness Testimony of Patricia Hakeem.**

Plaintiff contends that the ALJ erroneously rejected the testimony of Plaintiff's mother, Patricia Hakeem. (JS at 3-5, 7.) Specifically, Plaintiff argues that the ALJ's rejection of Ms. Hakeem's testimony on the basis of having "no contact" with Plaintiff was improper. (Id. at 4-5.)

Ms. Hakeem submitted a one-page, handwritten letter to the Social Security Administration on January 18, 2006. (AR at 91.) In the letter, Ms. Hakeem stated that her daughter was born with an umbilical cord wrapped around her neck. (Id.) Ms. Hakeem further stated that her daughter had many mental and physical problems and that "she needs a lot of help." (Id.) The ALJ stated, "Mrs. Hakeem's opinion is entitled to little, if any weight since the record reflects that she has had no contact with the claimant since the claimant was three years of age." (Id. at 18.)

Here, the ALJ found Ms. Hakeem's statements entitled to little probative value. (Id.) The ALJ's assertion that Plaintiff had "no contact" with Ms. Hakeem is not completely accurate. The record does reflect one verified contact with Ms. Hakeem in the eight years after Plaintiff was removed from the custody of her parents (id. at 52, 72, 207), because they allegedly had a drug laboratory in their

---

[5] The harmless error rule is applicable in Social Security cases. See Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir. 1984).

4

home.  (Id. at 137, 140.)  At the hearing on December 20, 2006, Plaintiff also admitted that she saw Ms. Hakeem a few days prior to the hearing but was unaware of where Ms. Hakeem resided.  (Id. at 207, 214.)  As a result, Ms. Hakeem had no known, direct knowledge of Plaintiff's activities, and she failed to provide any basis for her knowledge of Plaintiff's medical and psychological condition.

Based on the foregoing, the Court finds that the ALJ properly determined that Ms. Hakeem's testimony was entitled to little weight due to the minimal contact she had with Plaintiff.  Thus, the ALJ provided germane reasons for rejecting Ms. Hakeem's testimony.  Dodril, 12 F.3d at 919; see also SSR 06-03p (for non-medical sources, such as parents, it is "appropriate to consider such factors as the nature and extent of the relationship").

**2.     Lay Witness Testimony of Barbara Turner.**

Plaintiff contends that the ALJ erroneously rejected the testimony of Barbara Turner.  (JS at 8-10.)  Plaintiff argues that while Ms. Turner does not have first-hand or direct knowledge of Plaintiff, it is conceivable that Ms. Turner could have gathered this information from other sources.  (Id. at 9.)

Ms. Turner submitted a one-page, handwritten letter to the Social Security Administration on January 17, 2006.  (AR at 92.)  In the letter, Ms. Turner indicated that she sees Plaintiff on a daily basis and has known Plaintiff her entire life.  (Id.)  She repeated that Plaintiff has had serious problems in school, that she has serious mood swings, and that she cannot stay focused.  (Id.)

The ALJ discounted Ms. Turner's statements.  (Id. at 18.)  Specifically, the ALJ opined that "Ms. Turner's opinion is not entitled to significant weight because it appears it is based on what other people have told her and not first hand or direct knowledge."  (Id.)  While Ms. Turner stated that she has known Plaintiff her entire life (id. at 92), Ms. Turner failed to specify her relationship with Plaintiff or her basis for daily contact with Plaintiff.  See SSR 06-03p (for non-medical sources,

such as parents, it is "appropriate to consider such factors as the nature and extent of the relationship").

Moreover, Ms. Turner's testimony is contradicted by the school records. (AR at 17-18.) On February 14, 2006, an Individualized Education Program ("IEP") was completed by Plaintiff's special and general education teachers. (Id. at 17-18, 200-06.) The IEP indicated that Plaintiff "interacts with peers and adults in an age appropriate manner," "follows school and class limitations and rules," and has met her academic goals for 2005. (Id. at 201.) In discounting another special education teacher's opinion, the ALJ provided,

> If the claimant were constantly out of her seat in class, pushing and kicking other students, and generally misbehaving to the extreme so that it was not only affecting her class work but also that of the other students, then it would seem likely that this behavior would be documented, and the claimant would be removed from the classroom and placed in another setting. There is no evidence that claimant is disruptive on a daily basis. . . .

(Id. at 18.) Thus, even if the ALJ improperly determined that Ms. Turner had no first-hand knowledge of Plaintiff's daily activities, the record still reflects school evidence sufficient to discredit Ms. Turner's opinion.

Medical records also contradict Ms. Turner's testimony. (AR at 17); see also Bayliss v. Barnhart, 427 F. 3d 1211, 1218 (9th Cir. 2005) (ALJ may discount lay testimony which conflicts with the medical evidence). On March 16, 2005, Dr. Efren S. Valenzuela evaluated Plaintiff. (AR at 17, 137-39.) Dr. Valenzuela concluded that Plaintiff "behaved, [was] cooperative and follows instructs well." (Id. at 139.) On March 23, 2005, Dr. Goldman performed a psychological evaluation of Plaintiff. (Id. at 140-44.) During the psychological evaluation, Dr. Goldman did not observe any behavioral problems. (Id. at 141-44.) In fact, Dr.

Goldman stated that Plaintiff was "pleasant and cooperative," "followed instructions," and made an "adequate effort on the tasks presented to her." (Id. at 141.) The ALJ opined, "While the claimant has occasionally displayed disruptive disorder, neither Dr. Valenzuela nor Dr. Goldman observed any behavioral problems." (Id. at 17.) Thus, even if the ALJ improperly determined that Ms. Turner lacked direct knowledge of Plaintiff's daily activities, the record also reflects medical evidence sufficient to discredit Ms. Turner's opinion.

Plaintiff incorrectly argues that the ALJ had a duty to clarify Ms. Turner's relationship with Plaintiff. (JS at 9.) It is a plaintiff's duty to prove that she is disabled. Mayes v. Massanari, 276 F.3d 453, 458 (9th Cir. 2001) (citing 42 U.S.C. § 423(d)(5) (Supp. 2001) and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)). As noted in Mayes, an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459, 460 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)). In this case, the ALJ could properly consider Ms. Turner's letter without further inquiry.

Based on the foregoing, the Court finds that the ALJ properly rejected Ms. Turner's testimony because she failed to indicate any basis for her relationship with Plaintiff. Also, the school records and medical evidence were sufficient to discredit Ms. Turner's opinion. See Bayliss, 427 F. 3d at 1218. Thus, the ALJ provided germane reasons for discrediting Ms. Turner's testimony. See Dodril, 12 F.3d at 919.

### 3. Lay Witness Testimony of Estella Boykin.

Plaintiff contends that the ALJ erroneously rejected the testimony of Estella Boykin. (JS at 10-12.)

Ms. Boykin submitted a one-page letter to the Social Security Administration on January 19, 2006. (AR at 89.) In the letter, Ms. Boykin

indicated that she has known Plaintiff "most of her life." (Id.) Ms. Boykin noted that Plaintiff "has a problem listening, following orders, and speaking out. She is also very disruptive in class with her teacher and classmates, and at home or anywhere. . . ." (Id.) Ms. Boykin also wrote, "There is no one in her maternal family that will allow her to come into their home to be baby sat. I am the only one that I know of who will accept her in their home, to watch or baby sat [sic]. . . ." (Id.) Here, in rejecting Ms. Boykin's testimony, the ALJ provided:

> Mrs. Boykin's opinion is not entitled to great weight. She indicated that the claimant was out of turn at home and at home [sic] if not given her way, but she never indicated what relationship she has with the claimant, if she directly observed the claimant, or whether she received this information third hand. There is no evidence that Ms. Boykin teaches the claimant or watches her in class, and there is no information that Ms. Boykin lives with the claimant, is a neighbor, or in what manner she has had opportunity and how often she observes the claimant.

(Id. at 17.) While Ms. Boykin stated that she has known Plaintiff "most of her life" (id. at 89), Ms. Boykin failed to specify her relationship with Plaintiff or the length and duration of her contact with Plaintiff. It is, however, reasonable to assume that Ms. Boykin may have baby sat Plaintiff on occasion. See SSR 06-03p (for non-medical sources, such as parents, it is "appropriate to consider such factors as the nature and extent of the relationship").

Moreover, as set forth above, school records and medical evidence contradicted Ms. Boykin's testimony. (AR at 17-18, 137-44, 200-06); see also Bayliss, 427 F. 3d at 1218. Thus, even if the ALJ improperly determined that Ms. Boykin lacked direct knowledge of Plaintiff's behavior, the record still contains evidence sufficient to discredit Ms. Boykin's opinion. (AR at 17-18.)

Plaintiff also incorrectly argues that the ALJ had a duty to clarify Ms. Boykin's relationship with Plaintiff. (JS at 10-12.)  Again, it is a plaintiff's duty to prove that she is disabled. Mayes, 276 F.3d at 458; Clem, 894 F.2d at 330.  There is no ambiguous evidence, and the record is adequate to allow for proper evaluation of the evidence. Mayes, 276 F.3d at 459; Tonapetyan, 242 F.3d at 1150.  Thus, the ALJ could properly consider Ms. Boykin's letter without further inquiry.

Based on the foregoing, the Court finds that the ALJ properly discounted Ms. Boykin's testimony because she failed to indicate any basis for her relationship with Plaintiff.  Also, the school records and medical evidence were sufficient to discredit Ms. Turner's opinion. See Bayliss, 427 F. 3d at 1218.  Thus, the ALJ provided germane reasons for discrediting Ms. Boykin's testimony. See Dodril, 12 F.3d at 919.

### 4. Lay Witness Testimony of Debbie McCall.

Plaintiff contends that the ALJ erroneously discounted the testimony of Plaintiff's sixth grade special education teacher, Debbie McCall. (JS at 13-15.)

Ms. McCall submitted a one-page letter to the Social Security Administration on December 20, 2006. (AR at 90.)  In the letter, Ms. McCall indicated that she has talked to Plaintiff's guardian regarding Plaintiff's "constant behavior problems in class." (Id.)  Ms. McCall stated that Plaintiff is very physical with other students, and she pushes and kicks her peers. (Id.)  Ms. McCall indicated that Plaintiff always denies her behavior or blames her actions on someone else when questioned about her behavior. (Id.)  Ms. McCall wrote, "She is up out of her seat constantly and argues with the adults in the classroom.  I have timed her out to another seat and called home, but she doesn't seem to respond to either consequence." (Id.)  Ms. McCall also noted that while Plaintiff is a smart student, her behavior prevents her from completing her work and is disruptive to

the other students. (Id.)

Here, the ALJ discounted Ms. McCall's statements based upon contradictory school records. (Id. at 16-18.) As discussed above, the February 14, 2006, IEP included an assessment by Plaintiff's teachers, who indicated that Plaintiff "interacts with peers and adults in an age appropriate manner," "follows school and class limitations and rules," and has met her academic goals for 2005. (Id. at 17-18, 200-06.) Additionally, Plaintiff regularly participated in physical education, lunch, recess breaks, and school day activities. (Id. at 202.) While there are two documented instances of Plaintiff's unsatisfactory bus conduct, these events were over a year apart. (Id. at 18, 95-95A.) There exists no evidence in the record to suggest that this unsatisfactory conduct occurred on a daily basis or was continuing. In discounting Ms. McCall's testimony, the ALJ opined:

> Ms. McCall's answers are entitled to some consideration because she observes the claimant on a daily basis. However, her replies are contradicted by the other evidence in the file, including the assessment plan for 2006, which indicated that claimant obeys all classroom and school rules. While there is some indication the claimant has been disruptive on the school bus, there are only two such incidents reflected in the file, which were isolated incidents occurring over a year apart. Moreover, the same assessment plan indicates that claimant "interacts with peers and adults in an age appropriate manner." If the claimant were constantly out of her seat in class, pushing and kicking other students, and generally misbehaving to the extreme so that it was not only affecting her class work but also that of the other students, then it would seem likely that this behavior would be documented, and the claimant would be removed from the classroom and placed in another setting. There is no evidence that claimant is disruptive on a daily basis,

and there is nothing else in the file indicating that Ms. McCall has documented the claimant's behavior for school authorities. Therefore, the undersigned does not attach great weight to Ms. McCall's opinion. (Id. at 17-18.)

Based on the foregoing, the Court finds that the ALJ properly discredited Ms. McCall's testimony by relying on school records and the limited number of documented instances of unsatisfactory conduct. (Id.) Thus, the ALJ provided germane reasons for discrediting Ms. McCall's testimony. See Dodril, 12 F.3d at 919.[6]

///
///

**B.    The ALJ Properly Utilized Evidentiary Examples to Support His Analysis Under the Six Functional Domains of Childhood Disability.**

Plaintiff claims that the ALJ erred by failing to determine that her impairments functionally equaled a listing. (JS at 16-19.) Plaintiff also claims that the ALJ misstated or mischaracterized the evidence to find Plaintiff had less than a marked limitation in four of the six functional domains. (Id.)

---

[6] Notably, Plaintiff attempts to rely upon a school psychologist report conducted by Lori Alcocer on December 10, 2002. (JS at 13-14.) However, Plaintiff filed her application for Supplemental Security Income ("SSI") on December 28, 2004. (AR at 10.) As a result, the relevant period is between December 28, 2004, and through February 7, 2007 (AR at 24), the date of the ALJ's decision. See 42 U.S.C. § 1382(c)(7). Plaintiff's condition prior to her application for SSI benefits is of no weight because SSI benefits may not be applied retroactively. See 20 C.F.R. § 416.202 (g) (plaintiff must file an application to be eligible for SSI benefits); see also 20 C.F.R. § 416.501 (payment of benefits may not be made prior to the filing of the application for SSI benefits). Thus, the school psychologist report, conducted two years prior to Plaintiff filing for SSI benefits, is irrelevant here.

11

Individuals under the age of eighteen are eligible for Supplemental Security Income ("SSI") benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 1382c(a)(3)(C)(I). A medically determinable physical or mental impairment "causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." See 20 C.F.R. § 416.924(c); see also 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing of Impairments" or "Listing"); 20 C.F.R. § 416.925(a). An impairment "meets" a listed impairment if it is in the Listing of Impairments. See 20 C.F.R. § 416.925(b)(2)(I). An individual's condition "medically equals" a listed impairment if she can demonstrate medical findings related to her own impairment that are of equal medical significance to the listed one. See 20 C.F.R. § 416.926(a)(1)(ii). An impairment "functionally equals" a listed impairment if it will result in "marked" limitation in two domains of functioning or an "extreme" limitation in one. See 20 C.F.R. § 416.926a(a). The Social Security Administration ("SSA") considers an individual's functioning in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b)(1)(i)-(vi) (2007).

The Regulations provide that a marked limitation in a domain "interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limits several activities." See 20 C.F.R. § 416.926a(e)(2)(i). A

1  marked limitation is more than moderate but less than extreme.  <u>Id.</u>  A child
2  eighteen years or younger has marked limitation if he has a valid score that is two
3  standard deviations or more below the mean "on a comprehensive standardized test
4  designed to measure ability of functioning" in a domain and the child's "day-to-
5  day functioning in the domain related activities is consistent with that score."  <u>See</u>
6  20 C.F.R. § 416.926(a)(e)(2)(ii).

7        The Regulations provide that an extreme limitation in a domain "interferes
8  very seriously with your ability to independently initiate, sustain, or complete
9  activities.  Your day-to-day functioning may be very seriously limited when your
10 impairment(s) limits only one activity or when the interactive and cumulative
11 effects of your impairment(s) limits several activities."  <u>See</u> 20 C.F.R. §
12 416.926a(e)(3)(i).  An extreme limitation is more than a marked limitation, and it is
13 the rating given to the worst limitations.  <u>Id.</u>  A child eighteen years or younger has
14 an extreme limitation if he has a valid score that is three standard deviations or
15 more below the mean "on a comprehensive standardized test designed to measure
16 ability of functioning" in a domain and the child's "day-to-day functioning in the
17 domain related activities is consistent with that score."  <u>See</u> 20 C.F.R. §
18 416.926(a)(e)(3)(ii).

19     **1.**    <u>**Acquiring and using information.**</u>

20       Plaintiff argues that she has a "marked" limitation in the domain of
21 acquiring and using information based on the evaluations and comments of
22 Plaintiff's teacher, Blake Willey.  (JS at 16.)  The Court disagrees.

23       Here, the ALJ determined that Plaintiff had a less than marked limitation in
24 acquiring and using information.  (AR at 19).  The ALJ provides:

25           While the claimant is performing below her grade level, she had
26         made progress in school, and she met all her academic goals for the year
27         2005, according to her 2006 annual assessment.  The claimant can read
28

|   |   |
|---|---|
| 1 | at the third grade level, and she can write simple sentences. The |
| 2 | claimant's 6th grade teacher reported that the claimant requires small |
| 3 | group instruction, examples, and repetition to learn. He noted problems |
| 4 | the claimant has, but not serious problems. |

(Id. at 19, 74-88, 200-06.) The ALJ's conclusion is based on substantial evidence. The ALJ relied upon the school psychologist, Dr. James Lee Saunders, who administered standardized testing and concluded that Plaintiff had no educational, environmental, or economic disadvantage, nor cultural or ethnic difference affecting her ability to learn. (Id. at 16, 82-88.) Consultative psychologist, Dr. Kim Goldman, opined that Plaintiff's "ability to understand and respond to increasingly complex requests, instructions and questions in an age appropriate matter is not impaired. Her ability to communicate by understanding, initiating and using skills in an age appropriate manner is not impaired." (Id. at 15, 144.) A board certified psychiatrist, Michael Skopec, found that Plaintiff had a "less than marked" limitation in the domain of acquiring and using information. (Id. at 17, 155). Although Plaintiff's sixth grade teacher, Mr. Willey, indicated that Plaintiff had slight to obvious problems in several areas of acquiring and using information, he did not rate any of these problems as serious or very serious. (Id. at 19, 75). Based on this evidence, the ALJ properly determined that Plaintiff had a less than marked limitation in the domain of acquiring and using information.

Accordingly, the Court finds the ALJ's decision is based on substantial evidence in the record. Thus, there was no error.

**2.     Attending and completing tasks.**

Plaintiff also argues that she has a "marked" limitation in the domain of attending and completing tasks again based on the evaluations and comments of Mr. Willey. (JS at 17.) The Court disagrees.

The ALJ determined that Plaintiff had a less than marked limitation in

attending and completing tasks. (AR at 19-20). The ALJ provides:

> The claimant's 5th grade teacher reported that the claimant has serious problems in completed [sic] her work accurately without careless mistakes and working without distracting others. The claimant's aunt also reported that the claimant has deficits in this area. However, Dr. Goldman observed the claimant did not appear to be distracted, and she paid attention and persisted during the testing procedure. Dr. Goldman did not need to repeat instructions to the claimant, and she did not require clarification of the instructions. Dr. Valenzuela also reported that the claimant behaved; she was cooperative; and she followed instructions. Dr. Saunders reported that the claimant had normal attention, concentration, vigilance, motivation, and persistence.

(Id. at 20, 74-88, 137-44.) Claimant's teacher, Mr. Willey, reported that Plaintiff had serious problems in "completing work accurately without careless mistakes" and "working at a reasonable pace or finishing on time." (Id. at 76.) However, in the other eleven categories within the evaluation for attending and completing tasks, Mr. Willey indicated that Plaintiff had a slight to obvious problem, rather than a serious to a very serious problem. (Id.) The ALJ also relied upon the observations of the three physicians, who all indicated that Plaintiff's compliance with instructions during testing was average or less than marked. (Id. at 82-88, 137-44). Based on this evidence, the ALJ properly determined that Plaintiff had a less than marked limitation in the domain of attending and completing tasks.

Accordingly, the Court finds the ALJ's decision is based on substantial evidence in the record. Thus, there was no error.

### 3. **Interacting and relating with others.**

Plaintiff contends that she has a "marked" limitation in the domain of interacting and relating to others based on the incidents of misconduct by Plaintiff.

(JS at 17.) The Court disagrees.

Here, the ALJ determined that Plaintiff had a less than marked limitation in interacting and relating with others. (AR at 20-21). The ALJ provides:

> There is some indication that the claimant has had problems expressing her anger appropriately, but not to the degree that Ms. McCall described. As mentioned before, Drs. Goldman, Saunders, and Valenzuela had no difficulty in interacting with claimant. In the claimant's annual assessment report for the year 2006, it was noted that the claimant "interacts with peers and adults in an age appropriate manner. She appears to be happy at school." Other than having a serious problem in expressing her anger, the claimant's 5th grade teacher reported the claimant either had no problem or only slight problems.
>
> There are two "Unsatisfactory Bus Conduct Report" in the file. On May 11, 2004, the claimant stuck her head out the bus window and yelled profane language at another student. On September 20, 2005, the claimant was rude to the bus driver, and she was loud and boisterous. However, these appear to be isolated incidents since they occurred over a year apart, and there is no other evidence which documents constant disruptive behavior.

(Id. at 21.)

The ALJ properly bases his conclusion upon the medical evidence and school records. As discussed previously, the Court's review of the record does not suggest that unsatisfactory conduct occurred on a daily basis or was continuing. See supra Part III.A.4. Plaintiff's aunt reported that Plaintiff often gets in trouble on the bus and had her bus privileges suspended for five days. (JS at 17.) However, Plaintiff provides no evidence, such as school records or verification of the alleged suspension, to support her assertion, and the record is devoid of such

16

evidence. See Mayes, 276 F.3d at 458; Clem, 894 F.2d at 330 (plaintiff has a duty to prove that she is disabled). Based on this evidence, the ALJ properly determined that Plaintiff had a less than marked limitation in the domain of interacting and relating with others.

Accordingly, the Court finds the ALJ's decision is based on substantial evidence in the record. Thus, there was no error.

### 4. **Caring for yourself.**

Plaintiff also contends that she has a "marked" limitation in the domain of caring for yourself based on the information provided by her aunt and Mr. Willey. (JS at 17.) The Court disagrees.

Here, the ALJ determined that Plaintiff had a less than marked limitation in caring for herself. (AR at 22-23). The ALJ provides:

> The claimant's 5th grade instructor reported the claimant had mood swings during class and displayed difficulty handling frustration appropriately, identifying and appropriately asserting her emotional needs, responding appropriately to her mood changes, and knowing when to ask for help. Generally, however, the teacher indicated these problems are not serious.
>
> The claimant occasionally wets the bed at night, but this does not appear to be a significant problem. Additionally, the claimant can feed herself, dress and undress, care for her personal hygiene, and perform chores.

(Id. at 23.)

Plaintiff argues that Mr. Willey's statement that Plaintiff "experiences frequent and severe mood swings usually triggered during academic activities" is evidence of a "marked" limitation in this domain. (JS at 18; AR at 79.) However, Mr. Willey rated Plaintiff as having no problem to obvious problems in this

domain of caring for herself. (AR at 79.) Additionally, Plaintiff argues that bed-wetting, hiding or throwing away soiled undergarments, or cutting up clothing is indicative of a marked limitation in this domain. (JS at 18.) While bed-wetting at the age of eleven may be a cause for concern, the ALJ relies upon the evaluation of Dr. Goldman to counter this as a limitation. (AR at 23, 140-44.) Dr. Goldman stated:

> The claimant is able to use utensils appropriately. She can dress and undress herself completely including tying her shoes. She is capable of caring for all of her hygiene needs independently including washing her hands and face and using the toilet. She is not able to take a bath independently.

(Id. at 141.) Based upon Dr. Goldman's evaluation, Plaintiff appears able to take care of herself. To the extent that Plaintiff is bed-wetting, hiding or throwing away soiled undergarments, or cutting up clothing, this is not behavior that would demonstrate a marked or extreme limitation in this domain. In fact, such behavior could reasonably be in response to the bedwetting. See 20 C.F.R. §416.926a(k)(3)(i)-(iv). Based on this evidence, the ALJ properly determined that Plaintiff had a less than marked limitation in the domain of caring for yourself.

Accordingly, the Court finds the ALJ's decision is based on substantial evidence in the record. Thus, there was no error.

**C.     The ALJ Fully and Fairly Developed the Record.**

Plaintiff's last contention is that the ALJ failed to properly develop the record when he failed to ascertain additional information regarding the lay witness testimony. (JS at 23-24.) The Court disagrees.

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. Celaya v. Halter, 332 F.3d 1177, 1183 (9th

Cir. 2003); see also Tonapetyan, 242 F.3d at 1150; Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). The duty is heightened when the claimant is unrepresented or is mentally ill and thus unable to protect her own interests. Celaya, 332 F.3d at 1183; Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir.1992); see also Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (distinguishing Burch from Celaya at least in part, based on the fact that the plaintiff in Burch was represented by counsel). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." See Tonapetyan, 242 F.3d at 1150.

As previously discussed, the ALJ had adequate information to consider the testimony of the lay witnesses. See supra Parts III.A.1-4. The ALJ provided germane reasons, based on specific evidence in the record, to discount or reject the lay witness testimony of Ms. Hakeem, Ms. Turner, Ms. Boykin, and Ms. McCall. Id. Additionally, Plaintiff fails to explain how the testimony is ambiguous or inadequate. See Mayes, 276 F.3d at 458; Clem, 894 F.2d at 330 (plaintiff has a duty to prove that she is disabled). Based on the foregoing, the Court finds that the ALJ fully and fairly developed the record with respect to the lay witness testimony. Thus, there was no error.

/ / /

/ / /

## IV.

## **ORDER**

IT IS HEREBY ORDERED THAT Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

Dated: March 2, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge